NORTHERN ILLINOIS GAS COMPANY, Plaintiff-Appellee, v. R.W. DUNTEMAN COMPANY, Defendant-Appellant.

Second District   No. 2—98—0149

Opinion filed December 30, 1998.

690

Joseph P. Buell, of Chicago, for appellant.

Patricia M. Fennell, of Niew & Associates, P.C., of Oak Brook, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, R.W. Dunteman Company, appeals the trial court's order granting summary judgment in favor of plaintiff, Northern Illinois Gas Company. The issue on appeal is whether the trial court correctly construed the requirements of section 10 of the Illinois Underground Utility Facilities Damage Prevention Act (the Act) (220 ILCS 50/1 *et seq.* (West 1996)) and held that plaintiff's actions, by providing horizontal location markings of its underground utility facilities, were consistent with the definition of "approximate location" contained in section 10. Defendant contends that, to satisfy the provisions of section 10, plaintiff was also required to provide vertical location markings for

those underground facilities because they were specifically requested by defendant. We affirm.

At various times throughout 1993, defendant was performing road construction work in connection with the reconstruction of Schmale Road in Du Page County, Illinois. In a letter dated March 1, 1993, defendant requested that plaintiff furnish the vertical and horizontal locations of plaintiff's facilities. Defendant also wrote to the Du Page County division of transportation requesting the same information, pursuant to article 105.07 of the Illinois Department of Transportation Standard Specifications for Road and Bridge Construction. According to preconstruction meeting minutes in the record, on March 19, 1993, plaintiff acknowledged that approximately 5,350 linear feet of its gas main was in conflict with the construction and that Northern Pipeline would be the contractor to relocate the mains.

On four separate occasions occurring in September, November, and December 1993, defendant's machinery struck and damaged underground gas mains belonging to plaintiff. The place where the main was punctured in the September incident was marked with a horizontal mark; no vertical depth marking was present. With respect to the November incident, the record reflects that a marking was present at a curb site approximately 40 feet from the excavation site; no vertical depth marking was present. Concerning the first December 1993 accident, a construction site machine operator testified that he did not see any markings in the area; however, he explained that the markings were likely destroyed when a temporary culvert was made. Other evidence in the record reflects that the facilities were located horizontally, but not vertically. After initially striking a gas main, the operator was instructed to continue excavating. Shortly thereafter, the operator hit the gas main a second time.

In December 1994 plaintiff filed a verified complaint, seeking recovery for damages to its facilities as a result of defendant's alleged negligence, pursuant to section 9 of the Act (220 ILCS 50/9 (West 1996)). Defendant denied the material allegations of negligence contained in plaintiff's complaint and alleged, as an affirmative defense, that plaintiff's damages were proximately caused by its own negligence, in that plaintiff failed to mark the vertical and horizontal locations of the underground utility facilities.

In July 1996 plaintiff filed its motion for partial summary judgment on the issue of liability. After considering the arguments and statutory authority, the trial court granted plaintiff's motion. Defendant filed a motion to reconsider or, in the alternative, to request that the trial court certify for review pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) the issue of whether plaintiff was required to

provide horizontal and vertical location markings to satisfy the requirements of section 10 of the Act. Upon reconsideration, the trial court granted plaintiff's motion for summary judgment with respect to the September and December incidents, denied plaintiff's motion for summary judgment with respect to the November incident, and certified the following question for review:

"Whether [plaintiff] satisfied the requirements of [s]ection 10 of the *** Act, *** by providing horizontal location markings of their underground utility facilities consistent with the definition of 'approximate location' contained in [s]ection 10, or whether in order to satisfy those requirements, [plaintiff] was also required to provide vertical location markings for those underground facilities when specifically requested by [defendant]."

In January 1997 this court denied defendant's petition for interlocutory appeal pursuant to Rule 308, and the case was returned to the trial court. After a series of pretrial motions and hearings, the trial court rendered its final order on January 6, 1998. It found that plaintiff satisfied the requirements of section 10 of the Act by providing horizontal location markings of their underground utility facilities consistent with the definition of "approximate location" and was not required to provide vertical location marks for those facilities even when specifically requested by defendant. The trial court entered judgment in favor of plaintiff in the amount of $30,000. Defendant timely appeals.

■ Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). In adjudicating a summary judgment motion, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Guerino v. Depot Place Partnership*, 273 Ill. App. 3d 27, 30 (1995). Summary judgment is a drastic means of resolving litigation (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)) and should be allowed only when the moving party's right to judgment is clear and free from doubt (*Guerino*, 273 Ill. App. 3d at 30). We conduct a *de novo* review of an order granting summary judgment. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

■ On appeal, defendant contends that plaintiff was required to provide vertical, as well as horizontal, location markings of its underground facilities to satisfy the provisions of the Act. Defendant specifically requested both types of markings in its March correspondence to plaintiff. This issue is a question of statutory interpretation and, as such, was properly dealt with on a motion for summary judg-

ment. See *Fayhee v. State Board of Elections*, 295 Ill. App. 3d 392, 404 (1998).

Defendant's argument depends upon including the provision of vertical markings within the scope of "approximate location" when marking facilities in accordance with the notice provision of the Act.

■ Section 10 of the Act states:

"Upon notice by the person engaged in excavation or demolition, the person owning or operating underground utility facilities *** in or near the excavation or demolition area shall cause a written record to be made of the notice and shall mark *** the approximate locations of such facilities so as to enable the person excavating or demolishing to establish the location of the underground utility facilities ***." 220 ILCS 50/10 (West 1996).

■ Our function in construing a statute is to ascertain and give effect to the intent of the legislature. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 368 (1998); *Clay v. Kuhl*, 297 Ill. App. 3d 15, 19-20 (1998). Statutory language is the best indicator of this intent. *Zekman*, 182 Ill. 2d at 368-69. Where such language reveals the legislative drafters' intent, we may not resort to other aids for construction. *Zekman*, 182 Ill. 2d at 369. Our review on appeal of an issue of statutory construction is *de novo*. *Clay*, 297 Ill. App. 3d at 20.

■ In this case, the relevant language is the definition of the phrase "approximate location" contained within the statute:

"For the purposes of this Act, the 'approximate location' of underground utility facilities *** is defined as a strip of land at least 3 feet wide but not wider than the width of the underground facility *** plus 1½ feet on either side of such facility." 220 ILCS 50/10 (West 1996).

■ Giving effect to the plain language of the definition of "approximate location," we conclude that plaintiff satisfied the requirements of section 10 of the Act by horizontally marking the approximate locations of its facilities. Defendant would have us interpret this definition to include the depth at which the facilities could be located underground. We find this construction to be broader than the statutory definition. To find that plaintiff was under an obligation to mark vertically and horizontally 5,350 linear feet of facilities that were potentially in conflict with defendant's construction project because defendant requested they do so in a letter would be profoundly onerous to the point of absurdity. The purpose of the Act is threefold: to prevent negligent or unsafe excavation or demolition operations, to protect persons and property, and to preserve utility services. See 220 ILCS 50/1 (West 1996). The facilities were marked and defendant was aware that other precautions, such as hand digging, should occur to

prevent ruptures of the utility facilities. The record reflects that such precautions were not taken.

Furthermore, the departmental policies of the Illinois Department of Transportation that defendant cites are irrelevant to the disposition of this case, as no provision exists indicating an attempt to preempt the statute at issue. Finally, defendant's reliance on *Followell v. Central Illinois Public Service Co.*, 278 Ill. App. 3d 1103 (1996), is misplaced. *Followell* concerned the issue of whether the legislature intended to create a cause of action for a plaintiff to recover purely economic damages in tort when it provided for a finding of an owner's *prima facie* negligence in cases where the facilities are mislocated. *Followell*, 278 Ill. App. 3d at 1107. The reviewing court examined the duties imposed on a utility pursuant to section 9 of the Act and concluded that the legislature did intend to allow for a plaintiff to bring an action under section 9 as a result of an owner's breach of its duty under section 10 of the Act where the plaintiff has suffered purely economic damages. *Followell*, 278 Ill. App. 3d at 1107.

Accordingly, we conclude that plaintiff satisfied the requirements of section 10 of the Act by horizontally marking the approximate locations of its facilities.

For the foregoing reasons, the order of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and THOMAS, JJ., concur.